**William HAMES, Plaintiff,**

v.

**CITY OF MIAMI, et al., Defendants.**

No. 06–22360 CIV.

United States District Court,
S.D. Florida.

March 20, 2007.

Richard Francis O'Brien, III, Miami, FL, for Plaintiff.

Jennifer Lynn Cohen, Michael Fertig, Akerman Senterfitt, Miami, FL, John Joseph Quick, Weiss Serota Helfman Pastoriza et. al., Coral Gables, FL, Robert David Klausner, Klausner & Kaufman, P.A., Plantation, FL, Carol Ann Field, Attorney General Office, Fort Lauderdale, FL, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FEDERAL CLAIMS AND DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

SEITZ, District Judge.

THIS CAUSE is before the Court on the Motions to Dismiss of Defendants Miami Police Relief and Pension Fund (the "Fund") [DE–59], the City of Miami Firefighters' and Police Officers' Retirement Trust (the "Trust") [DE–69], the State of Florida, Department of Legal Affairs ("DLA") [DE–69], and the City of Miami ("City") [DE–62].[1] The case arises from pension forfeiture proceedings initiated against Plaintiff William Hames ("Plaintiff" or "Hames") under Florida's pension administration regime. The forfeiture proceedings implement Florida's constitutional and legislative mandate that public employees shall forfeit their pension benefits if convicted of certain felonies. Here, Plaintiff, a retired City of Miami police officer, pled guilty in 2001 to conspiracy to obstruct justice and to deprive inhabitants of the City of Miami of civil rights based on false statements he gave as part of a "cover up" of police shooting deaths known as the "I–395 shootings." Judgment was entered and Plaintiff was sentenced in 2004. Forfeiture proceedings were initiated in early 2006 and recently concluded with a finding of forfeiture.[2] By his Amended Complaint, Plaintiff alleges that the forfeiture proceedings, including any appeals therefrom, are constitutionally defective in a myriad of ways, and also give rise to state claims for breach of contract and negligence. Plaintiff seeks declaratory and injunctive relief either halting the forfeiture proceedings or the enforcement of any forfeiture order, and compensatory and punitive damages.[3]

Specifically, Plaintiff alleges that the City, Trust and Fund: (1) initiated the forfeiture proceedings in retaliation against him for exercising his First Amendment right to testify against other Miami police officers; (2) are attempting to impose a fine that is excessive under the Eighth Amendment; (3) failed to provide due process in connection with forfeiture proceedings and (4) breached the statutory pension contract in initiating the forfeiture. Plaintiff also sues the City for negligent failure to train, supervise or oversee the individuals who sit on the pension review board and are responsible for making pension forfeiture decisions. Finally, Plaintiff

---

1. The City earlier filed a motion for summary judgment [DE–19] prior to Plaintiff filing his Amended Complaint. Given the resolution of the case on the motions to dismiss, the Court will not consider the City's motion for summary judgment.

2. Since the time he filed his Amended Complaint, it appears that a judgment was rendered in the forfeiture proceedings requiring Plaintiff to forfeit his pension. *See* DE–57 p. 5; DE–78 p. 2.

3. Plaintiff includes his request for injunctive relief as a separate count in the Amended Complaint when in fact it is not a cause of action but a form of relief. Therefore, the Court does not consider Count IX independent of the other substantive causes of action.

seeks declaratory and injunctive relief against the State of Florida and the Florida Attorney General because he claims Florida's appellate procedures violate the Equal Protection Clause in that he will be unable to seek mandatory state Supreme Court review of any adverse decision by Third District Court of Appeals ("DCA") regarding forfeiture.

All Defendants move for dismissal of Plaintiff's Amended Complaint in its entirety on the ground that it presents no justiciable case or controversy and therefore the Court lacks subject matter jurisdiction. In particular, they contend that Plaintiff's Amended Complaint is founded upon a hypothetical outcome of a yet-to-be-concluded administrative process, and yet-to-be-initiated state court appeals process, and that any decision from this Court would, therefore, be an impermissible advisory opinion based on hypothetical facts. Defendants maintain that the dispute is not ripe given the necessary factual development required to make the dispute concrete and the lack of any injury to Plaintiff unless and until an adverse forfeiture decision materializes. In addition, the Trust, Fund and DLA move to dismiss each of Plaintiff's individual causes of action for failure to state a claim. Finally, the Trust and DLA ask the Court to abstain given the nature of the ongoing proceedings in the state venue, and DLA argues that it should be dismissed under the doctrine of sovereign immunity.[4]

Upon careful review of the motions, the response and replies thereto, and viewing the Amended Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff's claim that Florida's appellate procedures violate the U.S. Constitution is not a justiciable case or controversy over which this Court has jurisdiction and therefore that claim is dismissed. However, given the nature of the remaining claims, and because the administrative process is complete and a judgment on forfeiture rendered, the Court believes that these claims are ripe for review and unworthy of abstention. Nevertheless, the substantive constitutional claims should all be dismissed. Plaintiff cannot state a claim for First Amendment retaliation where forfeiture is mandated under Florida law, a predicate felony was committed, and the prevailing authorities do not clearly contradict the forfeiture determination. Likewise, pension forfeitures do not violate the Eighth Amendment where the entitlement to the pension is contingent on compliance with the pension forfeiture statute. Similarly, Plaintiff's allegations do not rise to the level of a due process violation at the administrative level; Plaintiff received all the process he was due under the Constitution. Finally, given dismissal of the federal claims, the Court declines to accept supplemental jurisdiction over the remaining state law claims.

## I. Background

### A. Hames' Complaint

Plaintiff William Hames ("Hames") is a retired City of Miami Police officer. Amend. Compl. ¶ 6. He retired in 1998, after 25 years of service. *Id.* ¶ 19. Upon

4. Some Defendants also move to dismiss for failure to exhaust his state administrative remedies, perhaps based on the Court's suggestion that Plaintiff's harm was likely not irreparable until he exhausted his administrative remedies and the board rendered a decision. *See* Order Denying Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction [DE–11]. This argument has no traction in light of *Patsy v. Bd. of Regents of Fla.,* 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) and its progeny, however, so it will not be addressed herein. *See Beaulieu v. City of Alabaster,* 454 F.3d 1219, 1226–27 (11th Cir.2006).

his retirement, Hames received a lump sum pension payment in excess of $282,000. *Id.* ¶ 21. Defendant Fund is a defined contribution, governmental retirement plan established pursuant to Chapter 185, Fla. Stat., and City of Miami Ordinance 6558. *Id.* ¶ 9. A five member board of trustees is charged with administering the Fund and ruling on forfeitures of funds paid to police officers such as Plaintiff. *Id.*

On July 16, 2006, Hames was notified by the Fund that a hearing was scheduled regarding the potential forfeiture of his pension benefits. Compl. ¶ 20. The hearing was scheduled for August 23, 2006, but it was later rescheduled for September 20, 2006. *Id.* Prior to issuing this notice, the board conducted a preliminary hearing in which the board determined that there was a basis for holding a formal forfeiture hearing. *Id.* ¶ 22. The board issued an Order Finding Probable Cause on February 20, 2006. *Id.*

The basis for initiating the forfeiture proceedings, and for issuing the Order Finding Probable Cause, stems from a shooting incident that took place while Hames was an active police officer. The incident ultimately lead to Hames' federal conviction in 2004. On November 7, 1995, Hames and other officers attempted to arrest several individuals who had committed a robbery. Amend. Compl. ¶ 23–30. After a car chase, Hames shot and killed one of the men and another officer shot and killed a second suspect. *Id.* Following the killings, other officers placed "throw down" weapons on the two deceased men and reported that the men were armed, presumably in an effort to justify the shootings. *Id.* ¶ 31. Several days after the shootings, Hames gave a statement to investigators in which he declared that the victims possessed weapons at the time they were fired upon by officers. ¶ 32–33.

After Hames retired from the police force in 1998, he was approached by FBI agents who were investigating several shooting incidents in South Florida, including the I–395 shootings. *Id.* ¶¶ 35–37. After the FBI inquiry, Hames contacted a lawyer and subsequently met with representatives from the United States Attorneys Office to discuss their investigations. *Id.* ¶ 37.

On September 5, 2001, an Information was filed in the United States District Court for the Southern District of Florida, Case No. 02–CR–208–Gold(6) [DE–82] charging Hames with violations of 18 U.S.C. §§ 242, 371 and 1512(b)(3) for conspiring with other police officers (a) to obstruct justice and (b) to deprive the citizens of Miami of their civil rights, by giving a false and misleading information regarding the I–395 shootings. *Id.* In September of 2001, Hames pled guilty to the charges and agreed to cooperate with the Government's case against other officers. As part of his cooperation, Hames gave testimony at the Grand Jury proceedings and also testified in two trials. *Id.* ¶ 43. Shortly after pleading guilty, Hames was notified by the Fund that it would hold a preliminary hearing regarding the possible forfeiture of his pension benefits. *Id.* ¶ 47.

Hames was not sentenced until November of 2004, after the trials at which he gave testimony concluded. Prior to sentencing, Hames argued to the sentencing judge that he was in all likelihood going to loose his pension and that the judge should consider this fact in formulating an appropriate sentence. *See* DE–1284, 02–CR–208 (Memorandum in Aid of Sentencing). The Government too noted that Hames would suffer pecuniary losses due to his cooperation. *See* DE–1303, 020CR–208 (Government's Sentencing Memorandum). Judge Gold sentenced Hames to three

years probation, community service and a $100 fine. *Id.* ¶ 46.

As indicated, on December 8, 2006 the Trust conducted a formal hearing in which documentary and testimonial evidence was presented, along with memoranda and argument from counsel. At the conclusion of the hearing, an order was entered forfeiting Hames' pension. It is unclear whether Hames has appealed that decision, although Defendants inform the Court that he has filed a petition for a writ of prohibition with Florida's Third District Court of Appeal. *See Hames v. City of Miami Firefighters' and Police Officers' Retirement Trust,* No. 3D-06-3132 (Fla. 3rd DCA). The content of that appeal is unknown.

## B. Florida's Pension Law

Florida law requires that public employees convicted of certain felonies that breach the public trust shall forfeit any rights to public pension benefits. Specifically, Florida's Constitution provides:

> Any public officer or employee who is convicted of a felony involving a breach of public trust shall be subject to forfeiture of rights and privileges under a public retirement system or pension plan in such manner as may be provided by law.

Fla. Const. Art. II § 8(d). To implement this constitutional mandate, the Florida Legislature enacted § 112.3173(3), Fla. Stat., which provides, in pertinent part:

> Forfeiture.—Any public officer or employee who is convicted of a specified offense committed prior to retirement ... shall forfeit all rights and benefits under any public retirement system of which he or she is a member, except for the return of his or her accumulated contributions as of the date of termination.

The statute enumerates six categories of "specified offenses" applicable to forfeiture proceedings. The final category under the statute is a catch-all provision declaring that forfeiture shall follow:

> The committing of any felony by a public officer or employee who, willfully and with intent to defraud the public or the public agency for which the public officer or employee acts or in which he or she is employed of the right to receive the faithful performance of his or her duty as a public officer or employee, realizes or obtains, or attempts to realize or obtain, a profit, gain, or advantage for himself or herself or for some other person through the use or attempted use of the power, rights, privileges, duties, or position of his or her public office or employment position.

§ 112.3713(2)(e)(6), Fla. Stat. With regard to the board's role, the forfeiture statute states in pertinent part that:

> Whenever the official or board responsible for paying benefits under a public retirement system receives notice pursuant to subsection (4), or otherwise has reason to believe that the rights and privileges of any person under such system are required to be forfeited under this section, such official or board shall give notice and hold a hearing in accordance with chapter 120 for the purpose of determining whether such rights and privileges are required to be forfeited. If the official or board determines that such rights and privileges are required to be forfeited, the official or board shall order such rights and privileges forfeited.

§ 112.3173(5)(a), Fla. Stat.

## II. Legal Standards

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

 The question of ripeness, like other challenges to a court's subject mat-

ter jurisdiction, are treated as a motion to dismiss under Rule 12(b)(1) and, thus, it is the burden of the Plaintiff to allege facts demonstrating the appropriateness of invoking judicial resolution of the dispute. *See Elend v. Basham,* 471 F.3d 1199 (11th Cir.2006) (analyzing ripeness under Rule 12(b)(1)). A Rule 12(b)(1) motion may challenge the court's subject matter jurisdiction based on the face of the pleadings or based on the actual substantive facts of the case. *Morrison v. Amway Corp.,* 323 F.3d 920, 925, n. 5 (11th Cir.2003). Where the jurisdictional attack is based on the face of the pleadings, the courts merely look to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true for purposes of the motion. *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990). The complaint may be dismissed on a facial attack only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1536 n. 5 (11th Cir.1994) (citation omitted). On the other hand, when addressing a factual challenge a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *See Lawrence,* 919 F.2d at 1528–29 (quoting *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir. 1981)). Generally, in the context of a factual challenge to jurisdiction, there is no presumption of truthfulness in favor of the plaintiff's allegations and the governing standard is more akin to that of a Rule 56 motion. *See id.* at 1529–30.

### B. Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move the court to dismiss a claim for "failure to state a claim upon which relief can be granted."

A court should not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59, (1984); *see also Sea Vessel, Inc. v. Reyes,* 23 F.3d 345, 347 (11th Cir.1994) (citation omitted). In evaluating a motion to dismiss a complaint, the court must accept all the alleged facts as true, and draw all inferences from those facts in the light most favorable to the plaintiff. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir.1994). The court, however, does not generally accept as true conclusory allegations. *South Fla. Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 408 n. 10(11th Cir.1996) (citing *Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974)).

### III. Analysis

#### A. Ripeness

As a threshold issue, Defendants collectively ask the Court to dismiss all of Plaintiff's claims as unripe for judicial review. For reasons explained below, the Court finds that only Courts IV and VIII—the constitutional attack on Florida's appellate procedures—are subject to dismissal on this ground.

 Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review. *Pittman v. Cole,* 267 F.3d 1269, 1278 (11th Cir.2001) (citing U.S. Const. art. III, § 2, cl. 1; *Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale,* 922 F.2d 756, 759 (11th Cir.1991)). The purpose of the ripeness doctrine "is to prevent the courts,

through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." *Id.* (internal quotation and citation omitted); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d 1301, 1315 (11th Cir.2000). The ripeness doctrine involves both jurisdictional and prudential concerns. *Id.* (citing *Digital Props., Inc. v. City of Plantation,* 121 F.3d 586, 589 (11th Cir.1997)). The inquiry requires a determination of (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration. *Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Pittman,* 267 F.3d at 1278 (citations omitted).

 In undertaking an analysis of the fitness prong, the Supreme Court has indicated that courts should consider whether judicial intervention would inappropriately interfere with further administrative action and whether the courts would benefit from further factual development of the issues presented. *Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 733, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). Indeed, the Eleventh Circuit has stated that "claims are less likely to be considered 'fit' for adjudication when they . . . require 'speculation about contingent future events.'" *Pittman,* 267 F.3d at 1278 (quoting *Cheffer,* 55 F.3d at 1524). This concern arises especially where the decision-making body has yet to render its final decision. *Id.; see also Digital Props.,* 121 F.3d at 590.

 In an earlier Order Denying Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction [DE–11] the Court found that Plaintiff had failed to establish the irreparable harm needed for preliminary injunctive relief with respect to his alleged right to Florida Supreme Court review, where

the forfeiture board had not made a final decision and, *a fortiori,* the intermediate appellate court had not yet reviewed his case. At that stage, Plaintiff had suffered no greater harm than any other party litigating at the trial level in Florida who may face an adverse decision, lose their appeal at the intermediate appellate level, and wish to seek Florida Supreme Court review. Faced with such speculation about contingent future events, the Court indicated that emergency injunctive relief was improper. That reasoning continues to hold true in the context of ripeness with respect to the attack on Florida's appellate rules. However, the earlier Order never purported to suggest that other claims were not ripe, because Plaintiff never raised other claims in his motion as a basis for a preliminary injunction. The remaining claims of First Amendment retaliation and denial of administrative due process are fit for review because there is no uncertainty over future contingent events; the administrative process is complete. Similarly, even if the excessive fine claim depended upon an adverse forfeiture decision, that adverse decision has come to pass. Further factual development is not necessary to clarify these issues.

 As for the hardship prong of the ripeness test, the Eleventh Circuit has explained that hardship exists if a party suffers an "immediate and direct impact" from a challenged decision or policy and that when such is the case, it is more likely to be considered ripe. *Pittman,* 267 F.3d at 1280 (internal quotation and citation omitted). Here, again, the impact of the state's appellate procedures for obtaining Supreme Court review is hardly immediate or direct given that no intermediate appeal has been concluded (if even initiated) and therefore no hardship is shown with regard to the alleged deficiencies in the appellate procedures. The same cannot be

said with respect to the other claims which arise from the initiation, prosecution and result of the forfeiture proceedings at the administrative level, which has been concluded to Plaintiff's detriment. Accordingly, the Court will grant Defendant's motion to dismiss for want of subject matter jurisdiction over Counts IV and VIII but decline the motion as to the remaining claims.[5]

## B. Abstention

 Defendants also ask the Court to abstain from exercising any jurisdiction that may exist over any of the claims in this case. The Court has looked at this issue and finds at this juncture, based on what the parties have provided, abstention is not appropriate. Federal courts possess discretion to refrain from deciding cases when moving forward "would interfere with a state criminal proceeding or a state civil or administrative proceeding that is akin to a criminal one." *Beaulieu v. City of Alabaster,* 454 F.3d 1219, 1231 (11th Cir.2006) (citing, *inter alia, Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423 436–37, 102 S.Ct. 2515, 73 L.Ed.2d 116(1982)). Here, the administrative proceedings are complete and the board has rendered its final decision. Defendants simply make conclusory declarations as to how this action would interfere with the completed forfeiture process. These conclusions provide insufficient justification to turn away a party with otherwise justiciable claims who alleges that state forfeiture proceedings have been misused to his detriment. The result might be otherwise if the Defendants had shown that Plaintiff had, or could have, raised these same claims in state court.

But without that assurance, abstention would be inappropriate.

## C. Individual Claims

Defendants each move to dismiss Plaintiff's constitutional due process, excessive fines, and First Amendment retaliation claims as a matter of law under Rule 12(b)(6). For the following reasons the Court grants Defendants' motions.

### 1. First Amendment Retaliation Claim

 Plaintiff's Count I alleges that the City, Trust and Fund initiated the forfeiture proceedings in retaliation for his testimony against fellow officers in the federal criminal cases involving the unlawful shootings by City of Miami police. "To state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix,* 423 F.3d 1247, 1250 (11th Cir. 2005) (citations omitted).

 Defendants motions to dismiss focus on the second and third elements. First, they argue that initiating a forfeiture proceeding after his guilty plea did not adversely affect Plaintiff's right to truthfully testify in court, and in fact, did not affect that right at all. Their argument seems to be that since the forfeiture arose *after* his testimony was given, forfeiture did not impede his ability to testify. This argument overlooks the fact that the First Amendment can be infringed not

---

5. Given the dismissal of Counts IV and VIII for lack of subject matter jurisdiction, the Court will not address any of the remaining arguments directed to these Counts except to point out the dubious nature of the constitutional challenge. *See generally Ohio v. Akron Metro. Park Dist.,* 281 U.S. 74, 80, 50 S.Ct. 228, 74 L.Ed. 710 (1930).

only by conduct designed to deter future protected speech but also by conduct designed to punish actual exercise of that speech. *See Pittman v. Tucker*, No. 06–11454, 2007 WL 62606 (11th Cir., Jan.9, 2007) (reversing district court's dismissal of prisoner's First Amendment claim that prison officials retaliated against him for filing grievances).

For their second argument, Defendants maintain that the board's initiation of a forfeiture proceeding after a felony conviction cannot be causally related to Plaintiff's testimony because forfeiture is not a discretionary undertaking by the board. Florida law mandates forfeiture where an employee commits a specified felony, and mandates a preliminary hearing when the board receives notice of the conviction or has reason to believe that the employee was convicted. Therefore, given that Plaintiff committed a felony, the forfeiture board was *required* by law to initiate proceedings because it had "reason to believe" that Plaintiff's conduct violated the statute. Plaintiff's testimony could not have altered the board's decision.

 Plaintiff does not dispute that the only trigger for a forfeiture proceeding is a felony conviction for one of a number of specified offenses, or that he was convicted of a felony offense. His response is that the felony offense he pled guilty to is not an offense that justifies forfeiture within the meaning of § 112.3173(2)(e), Fla. Stat., and therefore the board had no reason to believe the forfeiture statute was violated. Significantly, however, Plaintiff cites no authority for this proposition and ignores Florida decisions finding employees liable for forfeiture in a wide variety of contexts. If Plaintiff could point to a case showing that the forfeiture statute is not violated by a felony conviction for obstruction of justice or conspiracy to violate civil rights, then indeed the board would have little

"reason to believe" that forfeiture was warranted. In that case, one might reasonably infer that the rationale for initiating the forfeiture was retaliation. However, in this case Plaintiff cannot show that his convictions fall outside the forfeiture statute. Without any legal authority to support his view, Plaintiff's theory of retaliation boils down to his disagreement with the board's conclusion. That is not enough. Plaintiff cannot foreclose the board from their obligation to investigate and render decisions on forfeiture simply by arguing that he disagrees in advance with their conclusion. Indeed, the fact that there is no controlling authority on whether convictions for obstruction or conspiracy to violate civil rights implicate forfeiture does not undermine the board's duty to initiate a preliminary hearing but, as the statute envisions, such a situation requires it. Accordingly, the Court concludes that Plaintiff cannot state a claim for retaliation in this case because he committed a felony and there is at least a colorable argument that his felony conviction falls within the ambit of the forfeiture statute.

## 2. Eighth Amendment

 Plaintiff contends in Count II that the forfeiture of his pension under the facts of this case amounts to an unconstitutionally excessive fine in violation of the Eighth Amendment. The excessive fines clause is only implicated where the "fine" constitutes property that belongs to the defendant. *See Hopkins v. Oklahoma Public Employees Retirement System,* 150 F.3d 1155, 1162 (10th Cir.1998) (citing *Austin v. United States,* 509 U.S. 602, 604, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)). In the pension context, courts have found that an employee has no property interest in his or her pension plan for purposes of the Eighth Amendment, where the "right to

[the] pension always was contingent on maintaining honorable service during [plaintiff's] tenure in office." *Id.* Put differently, an employee has no vested property interest in the pension; it is always subject to the statutory forfeiture limitations. *Id.; see also Busbee v. State of Florida, Div. of Retirement,* 685 So.2d 914, 916 (Fla. 1st DCA1996)

Plaintiff tries to distinguish *Hopkins* and similar cases by arguing that *Hopkins* turns on the peculiarities of Oklahoma law regarding the time at which a pension vests. He claims, without any supporting authority, that his pension under Florida law "vested" prior to the time he was given notice of the potential forfeiture, presumably at the time he retired and received the pension funds. Even if that is a true statement concerning the time of vesting, and the Court expresses no view on the issue, under Florida law a pension still vests subject to the conditions in the forfeiture statute. *See Busbee,* 685 So.2d at 916 (explaining that pension plan vests subject to the forfeiture provisions) (citing *Steigerwalt v. City of St. Petersburg,* 316 So.2d 554, 556 (Fla.1975)). And under the Florida statute, it is the time the offense is committed that controls forfeiture, not the time of the ultimate conviction. *See* § 112.3173(3) ("Any public officer or employee who is convicted of a specified offense *committed prior to retirement ...* shall forfeit ....") (emphasis added). Here, there is no dispute that the offense was committed prior to Plaintiff's retirement.

Other courts have also rejected Plaintiff's argument, noting the ease with which an employee could avoid statutory forfeiture merely by favorably timing his retirement. In *Kerner v. State Employees' Retirement Syst.,* 72 Ill.2d 507, 21 Ill.Dec. 879, 382 N.E.2d 243, 246 (1978), for example, the Illinois Supreme Court explained

"that under plaintiff's theory, an employee need only retire prior to his conviction of a felony in order to render the entire statute meaningless. Certainly such easy circumvention of the law's purpose cannot have been intended." *See also Horsley v. Philadelphia Bd. of Pensions & Retirement,* 519 Pa. 264, 546 A.2d 1115, 1118 (1988) ("To hold otherwise would unfairly advantage those corrupt and felonious City employees who are fortuitous enough to avoid detection of their crimes until after they leave the City's employ: a result which would be both absurd and unreasonable."). Accordingly, no matter when Plaintiff's pension "vested," the Eight Amendment does not apply because it vested subject to the forfeiture provisions, and is therefore not Plaintiff's property for purposes of the Eighth Amendment.

### 3. Due Process Claims

Plaintiff levies two distinct types of due process claims against Defendants. First, in Count III he argues that the City, the Trust and the Fund all deprived him of due process at the administrative hearing level due to various procedural shortcomings in the administrative process. Second, in Count IV he claims that the State of Florida and the Attorney General have (or will) deprive him of due process in the course of his appeal of the administrative decision to the Florida Supreme Court because of the faulty appellate procedures. The Court has already concluded that the latter issue is not a justiceable controversy and therefore it will not be addressed here.

#### A. Administrative Hearings

 The Fourteenth Amendment to the United States Constitution states that no state "shall ... deprive any person of life, liberty or property without due process of law." U.S. Const. amend.

XIV, § 1. The principle concept of due process is "straightforward: the Due Process Clause provides that certain substantive rights-life, liberty, and property-cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "The essential requirements of due process ... are notice and an opportunity to respond." *Id.* at 546, 105 S.Ct. 1487. "In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally—protected liberty or property interest; (2) state action; and (3) constitutionally—inadequate process." *Arrington v. Helms,* 438 F.3d 1336, 1347–48 (11th Cir.2006) (quoting *Grayden v. Rhodes,* 345 F.3d 1225, 1232 (11th Cir.2003)). Defendants do not dispute that Plaintiff has a protected property interest in his pension benefits. Nor do they dispute that investigating, conducting hearings, and ordering forfeiture of Plaintiff's pension is "state action" under the second element. Instead, the sole dispute here is whether the process of reviewing Plaintiff's circumstances to determine whether forfeiture is appropriate is constitutionally adequate.

Plaintiff does not dispute that he received notice of the forfeiture hearings. Nor does he contend that he was denied an opportunity to be heard through counsel. Rather, Plaintiff maintains that due process was not satisfied because (1) he was not given specific notice of the facts that gave rise to the forfeiture proceedings, including a Bill of Particulars; (2) there was no adequate method for issuing subpoenas; and (3) the Trust members were not qualified to make legal determinations regarding forfeiture. *See* Amend. Compl. ¶¶ 68–69.

■■■ As to the first argument, due process does not require notice of "specific facts," much less a Bill of Particulars. All that is required is notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314, 70 S.Ct. 652; *Arrington,* 438 F.3d at 1349–50. While Hames may not have known exactly which provision of the forfeiture statute the Trust was moving under, he was apprised of the nature of the proceedings and was in fact on enough notice to make arguments that none of the six provisions under the forfeiture statute applied to his felony conviction. At the preliminary hearing, he argued that his felony conviction did not fall under any of the enumerated offenses in the forfeiture statute and that the catch-all section was inapplicable because he did not breach the public's trust or obtain any advantage for himself in the commission of the felony. *See* DE–33 (Transcript of Proceedings). Moreover, the preliminary hearing was only scheduled to address whether probable cause existed to proceed to a full hearing. As such, the results of the preliminary hearing gave him the specific notice of the board's basis for seeking forfeiture in the later full hearing. This two-tiered system of hearings offered more than enough notice under the circumstances.

■■■ As for the second argument regarding inadequate subpoenas, the Eleventh Circuit has held "expressly that procedural due process also does not require an absolute or independent right to subpoena witnesses in administrative hearings." *Foxy Lady, Inc. v. City of Atlanta, Ga.,* 347 F.3d 1232, 1238 (11th Cir.2003). As such, Plaintiff cannot state a constitutional claim for any deficiencies in the subpoena process. Furthermore, other

than stating that he would have liked to call FBI agents to testify on his behalf, Plaintiff never explains how their testimony would have been relevant to the forfeiture proceeding, or how he was prejudiced without having them testify. The sole inquiry at the hearing was whether Hames committed a felony with intent to defraud the public or police department of the right to receive the faithful performance of his duties, or whether he attempted to realize or obtain some advantage for himself or for some other person through the use of his position as a police officer. What the FBI agents working on the underlying criminal investigation could say about whether Plaintiff violated Florida's forfeiture statute is far from obvious. Without showing any sort of prejudice from the missing FBI agents, Plaintiff cannot establish a due process violation. *See Lopez v. United States*, 129 F.Supp.2d 1284, 1289 (D.N.M.2000) (due process violation for complete denial of discovery requires showing of "clear prejudice") (citing *Sims v. Nat'l Transp. Safety Bd.*, 662 F.2d 668, 671–72 (10th Cir.1981)).

 Finally, as to his complaint that due process was violated because the trustees who oversaw the hearing were not lawyers or law-trained, it is well-settled that "[t]he Due Process Clause 'has never been thought to require that the neutral and detached trier of fact be law trained or a judicial or administrative officer.'" *Washington v. Harper*, 494 U.S. 210, 231, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (quoting *Parham v. J.R.*, 442 U.S. 584, 607, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979)). As long as the decision-maker is neutral and unbiased, and Plaintiff has made no allegations to the contrary, the Constitution requires nothing more. Accordingly, there is no merit to Plaintiff's final argument.

### 4. State Law Breach of Contract and Tortious Failure to Train, Supervise and Administer Claims

Counts V–VII involve state law claims sounding in tort and contract against the Fund, the Trust and the City. Having dismissed all of the federal claims, there is no basis upon which to find subject matter jurisdiction over these remaining state law claims. Given no federal jurisdiction, and because Plaintiff has a state venue for seeking the requested relief, the Court will exercise its discretion to decline supplemental jurisdiction over the remaining state law claims. *See, e.g., Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) ("if the federal claims are dismissed before trial, [*United Mine Workers v.*] *Gibbs* [383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966),] strongly encourages or even requires dismissal of state law claims."). Accordingly, those claims are dismissed without prejudice.

### IV. Conclusion

For the foregoing reasons, Plaintiff's alleged constitutional violations of the First, Fifth, Eighth and Fourteenth Amendments fail as a matter of law and must be dismissed. The alleged defects in Florida's appellate process present a claim that, on the facts of this case, is unripe for adjudication. And finally, the Court declines to accept supplemental jurisdiction over Plaintiff's the state law claims. Accordingly, it is hereby

ORDERED that

(1) Plaintiff's Counts I, II and III in DE–1 are DISMISSED WITH PREJUDICE;

(2) Plaintiff's Counts IV and VIII are DISMISSED WITHOUT PREJUDICE as unripe for review;

(3) Plaintiff's Counts V, VI and VII are DISMISSED WITHOUT PREJUDICE for lack of federal jurisdiction;

(4) All pending motions not otherwise ruled upon are DENIED AS MOOT and this case is CLOSED.