NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4289-18T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BENNIE ANDERSON,

     Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

March 30, 2020

APPELLATE DIVISION

Submitted January 27, 2020 – Decided  March 30, 2020

Before Judges Sabatino, Sumners and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0600-19.

Miller, Meyerson & Corbo, attorneys for appellant (Nirmalan Nagulendran and Gerald D. Miller, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Steven K. Cuttonaro, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

NATALI, JR., J.A.D.

Defendant Bennie Anderson appeals from that portion of a Law

Division order compelling the forfeiture of his entire pension earned while

employed by the City of Jersey City (City) since 1978.[1]  The court based its forfeiture decision on the fact that defendant pled guilty to a federal information in the United States District Court for the District of New Jersey to interference with commerce by extortion under color of official right, contrary to 18 U.S.C. § 1951(a), for accepting a $300 bribe while employed in the City's Tax Assessor's office.  Defendant raises the following related points on appeal:

POINT I

THE STATE'S FORFEITURE OF THE DEFENDANT'S PENSION VIOLATES THE EXCESSIVE FINES CLAUSE OF THE EIGHTH AMENDMENT.

POINT II

THE FORFEITURE OF BENNIE ANDERSON'S PENSION WAS EXCESSIVE AND SHOULD BE REVERSED ON APPEAL.

We agree with defendant that forfeiture of his pension was a fine that implicates the Eighth Amendment of the United States Constitution and Article I, Paragraph 12 of the New Jersey Constitution because he had a property

---

[1]  The court also ordered defendant to forfeit any "public employment, office, or position" and "forever disqualified" him from "holding any office or position of honor, trust, or profit under this State or any of its administrative or political subdivisions."  Defendant does not challenge those provisions of the court's order.

interest in the form of a contractual right to receive pension benefits, despite the fact that this right was conditioned on his performance of honorable service. We disagree, however, with defendant's argument that the Excessive Fines Clause precludes the forfeiture of his entire pension for two reasons. First, by enacting N.J.S.A. 43:1-3.1, the Legislature expressed its clear intent that such a remedy was appropriate for the precise official misconduct committed by defendant. Second, we conclude that defendant's taking of a bribe in exchange for a favorable and unjustified change in a property's tax description is a profound breach of the public trust such that a total pension forfeiture is not a disproportionate result.

## I.

Defendant commenced employment with the City in October 1978. He held various positions in the Demolition Division and Engineering Division when, in 1990, he became an inspector in the Tax Assessor's office. According to defendant, at the time of his March 2017 retirement, he had held "every position in the office except that of assessor." When he retired, defendant had worked for the City for nearly four decades amassing a fully vested pension that entitled him to payments of $60,173.67 per year.

At all relevant times, in Jersey City a property's tax description included information related to its attendant zoning, including if the property was a two

or three-unit dwelling. To amend or alter that description, a property owner would ordinarily need to obtain approval from the Zoning Board for a variance which, if successful, would result in the Tax Assessor's office amending the property's tax description. As part of his responsibilities in the Tax Assessor's office, however, defendant had the power to alter the tax descriptions of City property without requiring a property owner to file a formal application with the City's Zoning Board.

In December 2012, a witness cooperating with law enforcement told defendant that he owned property currently zoned as a two-unit dwelling. He requested that defendant change the tax description of the property to reflect that the home was a three-unit dwelling. Defendant agreed to change the tax description without requiring approval from the Jersey City Zoning Board and accepted a $300 bribe for doing so. Defendant was promptly charged and pled guilty to a single count of 18 U.S.C. § 1951(a). He was sentenced consistent with his negotiated plea bargain to a two-year probationary term, with five months of home confinement, and fined $3,000.

After defendant's guilty plea, the City reduced his pension to $47,918.76. The State then filed a verified complaint and order to show cause seeking, among other relief, the complete forfeiture of defendant's pension and any related retirement benefits. The State alleged, consistent with the federal

4

information to which defendant pled guilty, that at all relevant times defendant was an employee of the Jersey City Tax Assessor's Office, a position of public office or employment within the meaning of N.J.S.A. 2C:51-2.

The trial court granted the State's application to proceed summarily and after hearing oral arguments, issued an oral decision and order granting the State's summary judgment application. In its oral decision, the court first determined that because defendant pled guilty to a federal crime involving dishonesty, the equivalent of a third-degree or higher offense that also "touch[ed]" upon his public employment, New Jersey law required that he forfeit his position in the Tax Assessor's office and be barred from future public employment. See N.J.S.A. 2C:51-2. Second, as to his pension, the court relied on N.J.S.A. 43:1-3.1 and State v. Steele, 420 N.J. Super. 129 (App. Div. 2011), and concluded that defendant's federal conviction mandated a complete pension forfeiture. As it explained, subsection (a) of N.J.S.A. 43:1-3 conditions the "receipt of public pension or retirement benefit[s] . . . upon the rendering of honorable service by a public . . . employee."

The trial court also noted that the Legislature amended N.J.S.A. 43:1-3.1 to mandate the complete forfeiture of a public employee's pension if convicted of one of the enumerated offenses in subsection (b), or of a "substantially similar offense under the laws of another state or the United States," which

5

"involves or touches . . . [public] office." As it was undisputed that defendant's federal conviction was substantially similar to several enumerated offenses and directly related to the discharge of his public duties in the Tax Assessor's office, the trial court granted the State's motion.

The court rejected defendant's arguments that N.J.S.A. 43:1-3.1 violated the Excessive Fines Clause of the Eighth Amendment of the United States Constitution and Article I, Paragraph 12 of the New Jersey Constitution. Relying on Hopkins v. Okla. Pub. Emps. Ret. Sys., 150 F.3d 1155 (10th Cir. 1998), Hames v. City of Miami, 479 F. Supp. 2d 1276 (S.D. Fla. 2007), Scarantino v. Pub. Sch. Emps.' Ret. Bd., 68 A.3d 375 (Pa. Commw. Ct. 2013), and Kerner v. State Emps. Ret. Sys., 382 N.E. 2d 243 (Ill. 1978), the court reasoned that because "pensions are more of a contractual arrangement between a public employee and [an] employer" which are conditioned on honorable service, as opposed to a property right, the breach of that condition vitiated any right to a pension benefit and, therefore, forfeiture of that benefit was not a payment or fine. Having determined that a public employee's pension benefits were not a property right, the court concluded that forfeiture of those benefits did not implicate the Excessive Fines Clause as the Eighth Amendment would only apply when payment to the government involved

"turning over 'property' that belonged to defendant." Hopkins, 150 F.3d at 1162 (quoting Austin v. United States, 509 U.S. 602, 604 (1993)).

After the court denied defendant's stay application, this appeal followed.

## II.

Our review of a ruling on summary judgment is de novo and we apply the same legal standard utilized by the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). "Summary judgment must be granted if 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law.'" Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting R. 4:46-2(c)). We accord no special deference to a trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

## III.

We note that defendant does not challenge the applicability of N.J.S.A. 43:1-3.1 to the facts before us. In this regard, defendant does not deny that the conduct for which he was convicted under 18 U.S.C. § 1951(a) also violates, or was substantially similar to, N.J.S.A. 2C:27-2 (bribery in official and political matters) and N.J.S.A. 2C:27-10 (acceptance or receipt of unlawful benefit by public servant for official behavior). Nor does defendant dispute

7

that upon a finding that defendant committed such an offense, the court was required to order a complete forfeiture of his pension. See N.J.S.A. 43:1-3.1(c)(1) ("A court of this State shall enter an order of pension forfeiture pursuant to this section . . . [i]mmediately upon a finding of guilt by the trier of fact or a plea of guilty entered in any court of this State."); Steele, 420 N.J. Super at 133-34.

Instead, defendant renews his argument that requiring forfeiture of his pension benefits is an unconstitutional excessive fine under the State and Federal Constitutions. See U.S. Const. amend. VIII ("[E]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); N.J. Const. art. I, ¶ 12 ("Excessive bail shall not be required, excessive fines shall not be imposed, and cruel and unusual punishments shall not be inflicted."). We disagree and affirm, albeit for different legal reasons than those stated by the trial court in its decision. See El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 169 (App. Div. 2005) (recognizing that an appellate court's function is to review orders, not reasons, and that we can affirm a trial court's orders without adopting its legal reasoning).

To determine whether a forfeiture is excessive under the Eighth Amendment, courts must first determine whether the punishment constitutes a

payment or fine within the meaning of the Excessive Fines Clause. See United States v. Bajakajian, 524 U.S. 321, 334 (1998). If the forfeiture constitutes such a fine, courts must then determine whether such a fine was excessive. Ibid.

The Eighth Amendment was "intended to prevent the government from abusing its power to punish" and the "'Excessive Fines Clause was intended to limit only those fines directly imposed by, and payable to, the government.'" Austin, 509 U.S. at 607 (quoting Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 268 (1989)). "[A]t the time the Constitution was adopted, 'the word "fine" was understood to mean a payment to a sovereign as punishment for some offense.'" Bajakajian, 524 U.S. at 327-28 (quoting Browning-Ferris, 492 U.S. at 265). The Excessive Fines Clause, therefore, "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" Id. at 328 (quoting Austin, 509 U.S. at 609-10).

Consequently, the forfeiture of property only qualifies as a fine for Eighth Amendment purposes if it constitutes punishment for an offense. See Bajakajian, 524 U.S. at 328. In Bajakajian, the Court noted that the civil forfeiture at issue there constituted punishment because it was "imposed at the culmination of a criminal proceeding and requires conviction of an underlying

felony, and it cannot be imposed upon an innocent [person], but only upon a person who has himself been convicted of a . . . violation." Ibid. The Supreme Court also held that "'a civil sanction that cannot fairly be said solely to serve a remedial purpose . . . is punishment.'" Austin, 509 U.S. at 610 (quoting United States v. Halper, 490 U.S. 435, 448 (1989)).

As to whether such a fine is excessive, the Supreme Court has held that a punitive forfeiture in the civil context violates the Eighth Amendment "if it is grossly disproportional to the gravity of defendant's offense." Bajakajian, 524 U.S. at 334. In articulating that standard, the Supreme Court reasoned that "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality [and] [t]he amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." Ibid. It noted that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature," id. at 336, and "a court's review of the propriety of a punishment will be inherently imprecise." Ibid. According to the Court, "[b]oth of these principles counsel against requiring strict proportionality between the amount of a punitive forfeiture and the gravity of a criminal offense," and are thus taken into account by its adoption of the standard of gross proportionality. Ibid.

As noted, the Supreme Court explained that "[i]f the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional."  Id. at 337.  In analyzing the gravity of the offense, the Bajakajian Court considered four factors:  1) the nature and extent of the crime; 2) whether the violation was related to other illegal activities; 3) the other penalties that may be imposed for the violation; and 4) the extent of the harm caused.  See id. at 337-40.

Several courts in other jurisdictions have considered excessive fine arguments with respect to pension forfeitures.  As noted by the trial court, the majority of those courts have held that pension forfeitures are not subject to an excessive fines analysis because receipt of pension funds is in the nature of a contractual arrangement between a public employee and employer conditioned on honorable services, rather than a property right.  See e.g. Hopkins, 150 F.3d at 1162, Hames, 479 F. Supp. 2d at 1288, Scarantino, 68 A.3d at 385, and Kerner, 382 N.E.2d at 246-47.

In Hopkins, a retired state employee was convicted in federal court of accepting a bribe in connection with his public employment.  150 F.3d at 1157-58.  At the time of his conviction, Hopkins was credited with thirty-two years of service and received a monthly pension of $4,293.18.  Id. at 1157.  After his conviction, Hopkins was notified that his pension would be reduced

by seventy percent in accordance with Oklahoma's pension forfeiture statute. Id. 1157-58. Hopkins estimated that this pension reduction resulted in an estimated loss of $706,452.85 and challenged his pension forfeiture in federal court alleging that the statute violated the Excessive Fines Clause of the Eighth Amendment. Id. at 1158.

The Tenth Circuit first noted that implicit in the interpretation that a fine was "payment to a sovereign as punishment for some offense," id. at 1162, was the notion that "it applies only when the payment to the government involves turning over 'property' of some kind that once belonged to the defendant." Ibid. (quoting Austin, 509 U.S. at 604). The court agreed with the District Court's reasoning that "under Oklahoma law, Hopkins had no 'property' right in his pension benefits – even though he had already begun to receive the pension benefits – because Hopkins' right to his pension always was contingent on maintaining honorable service during his tenure in office." Id. at 1162. The Tenth Circuit concluded that when Hopkins accepted a bribe, he "breached his duty of honorable service" and thus under Oklahoma law, Hopkins had no "vested right" in his pension benefits. Ibid.; see also Hames, 479 F. Supp. 2d at 1288 (holding under Florida law that a public employee has no property interest in pension benefits because the pension vests "subject to the conditions in the forfeiture statute"); Scarantino, 68 A.3d at 385 (holding

under Pennsylvania law that a public employee's right to pension benefits depends upon certain conditions precedent including that an employee not be convicted of certain crimes).

Defendant principally relies upon the Supreme Judicial Court of Massachusetts's decision in Pub. Emp. Ret. Admin. Comm'n v. Bettencourt, 47 N.E.3d 667 (Mass. 2016), which reached a contrary result to the Hopkins, Hames, and Scarantino courts. In that case, Edward Bettencourt, a police officer with over twenty-seven years of public service, was convicted of accessing without authorization the civil service examination scores of twenty-one other police officers. Id. at 671, 679. The court noted that "the essence of his crime, in substance, was one of 'snooping.'" Id. at 679. His subsequent application for retirement benefits was denied because his criminal convictions related to his public position and fell within the state's pension forfeiture statute. Id. at 671, 678.

In Bettencourt, the court concluded that under the facts before it, a total pension forfeiture constituted an excessive fine under the Eighth Amendment and rejected the view that Bettencourt "had only a future interest in receiving retirement allowance payments . . . that was wholly contingent on . . . not being convicted of a crime involving misconduct in office." Id. at 674. The court explained that Massachusetts courts had "long held the view" that public

employees who were members of the retirement system held an interest that originated in contract but in substance amounted to a property right. Id. at 675.

The court reasoned that at the point Bettencourt became a contributing member of the retirement system with deductions taken from his salary, "he acquired a protected interest in the retirement allowance provided by the retirement system that amounted to a property interest." Id. at 676-77. The court disagreed with the reasoning in the Hopkins line of cases and explained:

> [w]e are not persuaded by the reasoning in these cases. If an employee has a protected contract right and, derivatively, a property interest in retirement benefits, the fact that the benefits may be subject to forfeiture on account of misconduct does not change the fundamental character of the contract right or property interest. Rather, it simply means that the employee will lose his or her right and interest as a result of the misconduct.
>
> [Id. at 676.]

The court further explained that the Massachusetts forfeiture statute "effects what is in substance an extraction of payments from the employee to the Commonwealth" and concluded that because the pension forfeiture "involve[s] an 'extraction of payments' and is punitive, it is a fine within the meaning of the [E]xcessive [F]ines [C]lause of the Eighth Amendment," and total forfeiture was excessive under the circumstances. Id. at 677, 680-81.

We agree, in part, with the court's analysis in <u>Bettencourt</u> and are similarly unpersuaded by the reasoning in <u>Hopkins</u> and those courts which have held that public employees do not have a <u>property</u> <u>right</u> in pension benefits because that right is contingent on the employee maintaining honorable service during his or her tenure in office. Indeed, the New Jersey Supreme Court, like courts in Massachusetts, has recognized that a public employee's right to pension benefits is analogous to a property interest. <u>See</u> <u>Uricoli v. Bd. of Trustees, Police & Firemen's Ret. Sys.</u>, 91 N.J. 62, 76 (1982) (in analyzing the legislative intent of a pension forfeiture statute, the Court acknowledged two predilections that weighed against a total pension forfeiture including that "forfeiture – whether of one's pension or any other property or benefit to which one is otherwise entitled – is a penalty or a punishment for wrongful conduct" and that it is also "'remedial in character.'" (citations omitted)); <u>Eyers v. State, Bd. of Trs. Pub. Emps. Ret. Sys.</u>, 91 N.J. 51, 56 (1982) ("[T]he pension forfeiture policy is penal in nature and has as its objectives the same considerations underlying all such schemes: punishment of the individual and deterrence . . . .").[2]

---

[2]  We also note the Court in <u>Spina v. Consol. Police and Firemen's Pension Fund Comm'n</u>, 41 N.J. 391, 401-02 (1964), stated that "it seems idle to sum up either the public's or the employee's contribution in one crisp word . . . [but] [w]e have no doubt that pension benefits are not a gratuity" and "[t]he

We have also acknowledged that pension benefits are inherently property rights when equitably distributing assets in matrimonial proceedings. For example, in Whitfield v. Whitfield, 222 N.J. Super. 36, 45 (App. Div. 1987), we concluded that a spouse's pension interest accrued during a marriage, even if not yet vested, was subject to equitable distribution because "a pension plan [is] a form of deferred compensation for services rendered" and "[a]s a substitute for wages such benefits unquestionably constitute property." When discussing the non-vested pension at issue, we explained that "such a pension is property in the form of a contract right to deferred compensation subject only to the fulfillment of the condition of the requisite number of years of employment by the employee." Ibid.

And, in Barr v. Barr, 418 N.J. Super. 18, 28 (App. Div. 2012), we addressed a dependent spouse's right to the "increases [in the supporting spouse's military pension benefits] resulting from his post-judgment, pre-retirement promotion." Although we vacated the trial judge's determination that the plaintiff had an interest in the "post-dissolution pension increases" and remanded for a plenary hearing, in our decision, we again observed that a pension reflects "'deferred compensation for services rendered,'" and "[r]ather

employee has a property interest in an existing fund which the State could not simply confiscate."

than receiving current income, the monies are deferred until retirement." Id. at 33 (quoting Whitfield, 222 N.J. Super. at 45).

Like the police officer in Bettencourt, defendant here had a protected property interest in his pension benefits, for purposes of an Eighth Amendment analysis, because he had a contractual right to receive those benefits in exchange for his public employment. As the court in Bettencourt cogently observed, the nature of defendant's property interest does not change merely because receipt of those benefits is conditioned on defendant's rendering of honorable service. Instead, "it simply means that the employee will lose his or her right and interest as a result of the misconduct." 47 N.E.3d at 676. By withholding payment of defendant's pension income, the State effectively extracted payments that were due to defendant (and to which he was already receiving) because of his misconduct. Under such circumstances, we conclude defendant's right to a pension was a property right and the forfeiture was a "fine" within the meaning of the Eighth Amendment. See Bajakajian, 524 U.S. at 328 (quoting Austin, 509 U.S. at 609-10).

And, the pension forfeiture ordered by the trial court was a "punishment" for purposes of an Eighth Amendment analysis. Indeed, neither party argues that pension forfeitures pursuant to N.J.S.A. 43:1-3.1 are solely remedial and, as in Bajakajian, defendant's loss of pension benefits was "imposed at the

17                                                                                                    A-4289-18T3

culmination of a criminal proceeding and require[d] conviction of an underlying felony, and it cannot be imposed upon an innocent [public employee]." 524 U.S. at 328; see also Corvelli v. Bd. of Trs. Police & Firemen's Ret. Sys., 130 N.J. 539, 550 (1992) ("[P]ension forfeiture operates as a 'penalty or punishment for wrongful conduct.'" (quoting Uricoli, 91 N.J. at 76)); Fiola v. State, Dep't of Treasury, Div. of Pensions, 193 N.J. Super. 340, 347-48 (App. Div. 1984) ("Forfeiture of earned pension rights . . . constitutes a drastic penalty which the New Jersey Supreme Court has become increasingly loath to permit even in the case of employee misconduct unless that penalty has been clearly mandated by the Legislature.")

IV.

In light of our decision that the forfeiture of pension benefits is a punitive fine that implicates the Excessive Fines Clause, we next address defendant's second point. Defendant argues that the forfeiture of $47,918.76 per year in pension income for the duration of his life because he accepted a $300 bribe is an excessive fine under the Eighth Amendment and warrants reversal. We disagree.[3]

---

[3] We recognize that the trial court did not address whether forfeiture of defendant's pension benefits was unconstitutionally excessive because it held that the forfeiture was not a payment or fine that implicated the Eighth Amendment. We nevertheless address that argument as the issue was briefed

As discussed, in determining whether a fine violates the Excessive Fines Clause, courts must "compare the forfeiture amount to that offense, and '[i]f the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional.'" Bettencourt, 47 N.E.3d at 678 (citing Bajakajian, 524 U.S. at 337). The Bajakajian Court initially emphasized that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." Id. at 336. The Court then considered four factors in weighing the gravity of a defendant's underlying offense: 1) the nature and extent of the crime; 2) whether the violation was related to other illegal activities; 3) the other penalties that may be imposed for the violation; and 4) the extent of the harm caused. See id. at 337-40.

Applying that analysis here, we first note that while mandatory forfeiture of defendant's pension benefits may seem like a harsh penalty given his receipt of a mere $300 bribe, the Legislature deemed such a result to be an appropriate consequence for that precise official misconduct.[4] It was well within the

_____

by the parties, "the record is adequate to terminate the dispute[,] and no further fact-finding[,] . . . administrative expertise[,] or discretion is involved." Price v. Himeji, LLC, 214 N.J. 263, 294 (2013) (quoting Vas v. Roberts, 418 N.J. Super. 509, 523-24 (App. Div. 2011)).

[4] As conceded by the State, defendant will receive a total return of his pension contributions. See Legislative Fiscal Estimate, Senate No. 14, 212 Leg. (N.J.

Legislature's power to set this penalty as it saw fit.  See Steele, 420 N.J. Super at 133-34; Brown v. Heymann, 62 N.J. 1, 10-11 (noting that policy decisions rest with the Legislature and that a statute's constitutionality "does not turn upon whether a plan is wise or unwise in a judge's view").

Further, N.J.S.A. 43:1-3.1, like all statutes, is presumed constitutional. See Whirlpool Props. v. Dir., Div. of Taxation, 208 N.J. 141, 175 (2011).  The judiciary has always exercised its power to invalidate a legislative act with restraint and "a deep awareness that the challenged enactment represents the considered action of a body composed of popularly elected representatives." N.J. Sports & Exposition Auth. v. McCrane, 61 N.J. 1, 8 (1972).  A legislative act will only be declared void if "its repugnancy to the Constitution is clear beyond a reasonable doubt."  Harvey v. Bd. of Chosen Freeholders, 30 N.J. 381, 388 (1959).

Moreover, N.J.S.A. 43:1-3.1 is not unprecedented in its imposition of pension forfeiture as a penalty for misconduct as "[t]he policy requiring forfeiture of pension rights on account of dishonorable service has been part of our law for over half a century."  Corvelli, 130 N.J. at 550.  Indeed, "[a]ll public pension statutes in this State carry an implicit condition precedent of

Feb. 14, 2007) ("[A] member whose pension is forfeited receives a refund of his own contributions to the fund or system, and this bill is not intended to change this practice.").

honorable service . . . [and] operate[] as a penalty or punishment for wrongful conduct." Ibid. As noted, pension forfeiture serves two significant government objectives: "punishment of the individual and deterrence, both as to the offending individual and other employees." Eyers, 91 N.J. at 56. In serving these dual purposes of punishment and deterrence, N.J.S.A. 43:1-3.1 operates to protect the public from the serious problem of government corruption.

Turning to the gravity of defendant's offense, we acknowledge that he pled guilty to a single count of violating 18 U.S.C. § 1951(a) after accepting a $300 bribe and that his offense was unrelated to other illegal activities. We note, however, that the maximum punishment authorized for a single offense under 18 U.S.C. § 1951 is a fine or imprisonment of up to twenty years, or both.

Further, when defendant took the $300 bribe, he significantly and materially breached the public's trust. Indeed, honest, hardworking taxpayers and property owners have the right to expect, require, and demand that public servants perform their jobs honorably. That certainly is true with respect to zoning decisions which necessarily affect the health and safety of the tenants and owners of the affected properties. It is beyond peradventure that those decisions must be based on the diligent and conscientious application of the

21 A-4289-18T3

law to the relevant facts, as appropriate, and not the result of illegal payments, even a bribe of $300, which may appear to be a modest sum, but in actuality is a colossal amount when measured against the damage to the public trust caused by that illegal act.

We acknowledge that the court in Bettencourt deemed the pension forfeiture in that case to be constitutionally excessive. In doing so, it concluded that "no harm to the public fisc was accomplished or threatened," "there was no improper or illegal gain involved," "the offenses did not warrant concern about protection of the public," and Bettencourt received no "personal benefit, profit, or gain from his actions." Bettencourt, 47 N.E.3d at 680. Here, defendant was not convicted of effectively "snooping" on his colleagues' test results. Id. at 679. He took money illegally to perform a function he was being paid to honorably discharge. As noted, our Legislature in enacting N.J.S.A. 43:1-3.1 deemed that conduct sufficiently egregious to warrant a complete pension forfeiture and we conclude that such a remedy is not constitutionally disproportionate.

V.

Having considered the Legislature's determination that total forfeiture of pension benefits is an appropriate consequence of certain public employee misconduct, and that the punishment here was not grossly disproportional in

comparison to the gravity of his offense, we conclude that forfeiture of defendant's pension was not excessive under either the Eighth Amendment of the United States Constitution or Article I, Paragraph 12 of the New Jersey Constitution.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4289-18T3