NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11906

PUBLIC EMPLOYEE RETIREMENT ADMINISTRATION COMMISSION  vs.
EDWARD A. BETTENCOURT.


Suffolk.     October 6, 2015. - April 6, 2016.

Present (Sitting at New Bedford):  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.


Public Employee Retirement Administration Commission.
    Retirement.  Public Employment, Retirement benefits, Forfeiture of retirement benefits.  Constitutional Law, Excessive fines clause.



    Civil action commenced in the Superior Court Department on December 19, 2012.

    The case was heard by Garry V. Inge, J., on motions for judgment on the pleadings.

    The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


    Paul T. Hynes (Michael R. Keefe with him) for the defendant.
    Peter Sacks, State Solicitor (Judith A. Corrigan, Special Assistant Attorney General, with him) for the plaintiff.
    Ian O. Russell & Patrick N. Bryant for Massachusetts Coalition of Police, amicus curiae, submitted a brief.

BOTSFORD, J.  The Commonwealth's law governing public employee retirement systems and pensions requires that a public employee forfeit the retirement and health insurance benefits (retirement allowance or pension) to which the employee would be entitled upon conviction of a crime "involving violation of the laws applicable to [the employee's] office or position."  G. L. c. 32, § 15 (4) (§ 15 [4]).[1]  We consider here whether this mandatory forfeiture of a public employee's retirement allowance qualifies as a "fine" under the excessive fines clause of the Eighth Amendment to the United States Constitution.  We conclude that it does and that, in the circumstances of this case, the mandatory forfeiture of the public employee's retirement allowance is "excessive."[2]

Background.[3]  Edward A. Bettencourt was first appointed as a police officer in the city of Peabody in October, 1980, and became a member of the Peabody retirement system on November 7,

---

[1] The statutory forfeiture provision at issue in this case, G. L. c. 32, § 15 (4) (§ 15 [4]), by its terms applies solely to "member[s]" of a public employee retirement system.  In this opinion, we generally use the term "public employee" rather than "member;" every member is or was a public employee.

[2] We acknowledge the amicus brief submitted by the Massachusetts Coalition of Police.

[3] The facts are taken from the record on appeal, and are generally not in dispute, except that the parties disagree about the value of the defendant Edward A. Bettencourt's retirement allowance.

1982.[4]  Bettencourt was promoted to the rank of sergeant around 1990, and promoted again to serve as a lieutenant in 2003.  In the early morning hours of December 25, 2004, Bettencourt was on duty as a watch commander, and he knowingly accessed, through the Internet and without permission, the Massachusetts human resources division (HRD) computer system, and specifically the HRD Internet site containing individual applicant record information.  Gaining the unauthorized access, he viewed the civil service promotional examination scores of twenty-one other police officers, including four officers who were his direct competitors for a promotion to the position of captain in the police department.  In order to view the examination scores of these other officers, Bettencourt created a distinct user account for each officer, using the Social Security numbers and birth dates of the officers.

On October 26, 2006, Bettencourt was indicted for unauthorized access to a computer system, in violation of G. L. c. 266, § 120F; the indictment contained twenty-one separate counts.  On April 4, 2008, at the conclusion of a jury-waived trial before a judge in the Superior Court (trial judge),

---

[4] The Peabody retirement system is a public pension system that operates pursuant to G. L. c. 32.

Bettencourt was found guilty on all counts.[5]  Bettencourt filed an application for voluntary superannuation retirement with the Peabody retirement board (board) on the same day he was found guilty.  As of that date, he had served as a Peabody police officer for over twenty-seven years and had been a member of the Peabody retirement system for over twenty-five years.  On May 23, 2008, after learning of Bettencourt's convictions, the board held an evidentiary hearing to determine whether, because of these convictions, Bettencourt remained eligible for his retirement allowance.  A majority of the board concluded that none of the convictions was a "violation of the laws applicable to his office or position" under § 15 (4), and, thus, his application for superannuation retirement was to be processed, subject to the approval of the public employee retirement administration commission (PERAC).  On September 10, 2008, PERAC denied Bettencourt's retirement application because it concluded that Bettencourt's criminal convictions did relate to his office or position, and therefore, under § 15 (4), he was not entitled to receive any retirement allowance.

---

[5] On April 18, 2008, Bettencourt was sentenced to a fine of $500 on each of the twenty-one counts of the indictment, for a total of $10,500.  In imposing her sentence, the trial judge rejected the Commonwealth's sentencing recommendation of a probationary sentence of eighteen months and one hundred hours of community service, in addition to a fine of $500 per count; she also rejected Bettencourt's recommendation of a period of unsupervised probation and no fine.

Bettencourt sought certiorari review of PERAC's decision in the Peabody Division of the District Court Department, arguing that his convictions did not trigger the forfeiture mandated by § 15 (4) because they were not related to his office or position, and, alternatively, that the forfeiture of his pension would constitute an "excessive fine" in violation of the Eighth Amendment. A judge in the District Court concluded that Bettencourt's convictions were not sufficiently related to his office or position as to trigger forfeiture under § 15 (4), and, therefore, the judge did not reach the "excessive fine" argument. PERAC sought certiorari review of the judge's decision in the Superior Court. A Superior Court judge affirmed the District Court decision, and PERAC appealed to the Appeals Court. In a memorandum and order pursuant to its rule 1:28, the Appeals Court, concluding that Bettencourt's convictions were linked directly to his office or position, vacated the judgment and remanded the case to the District Court for consideration of Bettencourt's alternative argument that forfeiture of his pension constituted an excessive fine. Public Employee Retirement Admin. Comm'n v. Bettencourt, 81 Mass. App. Ct. 1113 (2012).

On remand, the District Court judge concluded that forfeiture of a retirement allowance pursuant to § 15 (4) was a fine under the Eighth Amendment and that the fine in this case,

forfeiture of Bettencourt's lifetime retirement allowance, as compared to the harm suffered by the other officers and the public, was excessive and violated the Eighth Amendment. PERAC again sought certiorari review in the Superior Court. In an amended decision dated February 6, 2014, a Superior Court judge reversed, ruling that forfeiture of an employee's pension rights under § 15 (4) does not constitute a fine for purposes of the Eighth Amendment because "the right to a pension is conditioned on not incurring criminal convictions related to public service." Bettencourt filed a timely appeal in the Appeals Court, and we transferred the case to this court on our own motion.

Discussion. General Laws c. 32, § 15 (4), provides:

> "Forfeiture of pension upon misconduct. -- In no event shall any member [of a retirement system] after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance under the provisions of [G. L. c. 32, §§ 1 through 28], inclusive, nor shall any beneficiary be entitled to receive any benefits under such provisions on account of such member. The said member or his beneficiary shall receive, unless otherwise prohibited by law, a return of his accumulated total deductions; provided, however, that the rate of regular interest for the purpose of calculating accumulated total deductions shall be zero."

At this juncture, Bettencourt does not challenge the Appeals Court's conclusion that his convictions under G. L. c. 266, § 120F, involved violations of a law "applicable to his office or position" within the meaning of § 15 (4), and, thus,

triggered imposition of the section's forfeiture provisions.[6] Rather, he focuses solely on his Eighth Amendment claim.[7] That claim has two parts: (1) the forfeiture of his pension under § 15 (4) by its terms qualifies as a fine; and (2) the fine is excessive. This court has considered the claim's second part, excessiveness, in two previous cases, MacLean v. State Bd. of Retirement, 432 Mass. 339, 347-350 (2000), and Maher v. Retirement Bd. of Quincy, 452 Mass. 517, 523-525 (2008), cert. denied, 556 U.S. 1166 (2009).[8] We have never addressed the

---

[6] Bettencourt has appealed his underlying convictions, and that appeal is pending in the Appeals Court.

[7] The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted" (emphasis added). The due process clause of the Fourteenth Amendment to the United States Constitution "makes the Eighth Amendment's prohibition against excessive fines and cruel and unusual punishments applicable to the States," Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433-434 (2001), and imposes "substantive limits" on the broad discretion that States exercise in the criminal penalty arena, id. at 433.

Article 26 of the Massachusetts Declaration of Rights contains an excessive fines clause: "No magistrate or court of law, shall demand excessive bail or sureties, impose excessive fines, or inflict cruel or unusual punishments." However, the parties have not raised a claim under art. 26 and therefore we consider solely the Eighth Amendment in this case.

[8] In both MacLean v. State Bd. of Retirement, 432 Mass. 339 (2000), and Maher v. Retirement Bd. of Quincy, 452 Mass. 517 (2008), cert. denied, 556 U.S. 1166 (2009), this court assumed, without deciding, that forfeiture of pension benefits pursuant to § 15 (4) constitutes a fine for purposes of the Eighth Amendment, and then concluded in each case that the fine was not excessive and therefore no violation of the excessive fines

threshold question whether the forfeiture of a public employee's pension under § 15 (4) is a "fine" under the Eighth Amendment. We consider that question first.

    1.  Is the forfeiture required by § 15 (4) a fine?  a. Property requirement.  As it noted in United States v. Bajakajian, 524 U.S. 321, 327 (1998), the United States Supreme Court has had "little occasion" to interpret the Eighth Amendment's excessive fines clause.  In that case, following the lead of two earlier decisions, the Court explained that "at the time the Constitution was adopted, 'the word "fine" was understood to mean a payment to a sovereign as punishment for some offense.'"  Id. at 327, quoting Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 265 (1989).[9]  A fine may involve the payment of money to the government, but as Bajakajian makes clear, the forfeiture of property also may

---

clause had occurred.  See MacLean, supra at 346, 347-350; Maher, supra at 523-525.  See also Flaherty v. Justices of the Haverhill Div. of the Dist. Court Dep't of the Trial Court, 83 Mass. App. Ct. 120, 123-125, cert. denied, 134 S. Ct. 325 (2013) (adopting same assumption and concluding forfeiture not excessive).

[9] In Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 265, 275-276 (1989), the United States Supreme Court concluded that an award of punitive damages in a civil case between two private parties does not implicate the excessive fines clause, because the clause applies only when the required payment is to the government, i.e., the sovereign.

qualify as a fine.[10]  Moreover, the Supreme Court has held that the excessive fines clause does not apply solely to criminal cases, such as Bajakajian; a civil forfeiture proceeding in which the government seeks the forfeiture of particular property on account of its owner's conviction of a crime also implicates the clause.  See Austin v. United States, 509 U.S. 602, 608-610, 618, 621-622 (1993) (civil proceeding initiated by government seeking to forfeit auto body shop and mobile home as instrumentalities of drug offense to which property owner pleaded guilty; forfeiture sought by government qualified as fine under Eighth Amendment).  "The Excessive Fines Clause thus 'limits the government's power to extract payments, whether in cash or in kind, "as punishment for some offense."'. . . Forfeitures -- payments in kind -- are thus 'fines' if they constitute punishment for an offense."  Bajakajian, supra at 328, quoting Austin, supra at 609-610.

---

[10] United States v. Bajakajian, 524 U.S. 321 (1998), involved a defendant who had pleaded guilty to failing to report exported currency in excess of $10,000 in violation of 31 U.S.C. § 5316(a)(1)(A).  A separate Federal statute required that "a person convicted of willfully violating this reporting requirement shall forfeit to the Government 'any property . . . involved in such offense.'"  Bajakajian, supra at 324.  Under this forfeiture statute, 18 U.S.C. § 982(a)(1), the United States sought forfeiture of the entire $357,144 that Bajakajian had failed to report.  The Supreme Court concluded that forfeiture of the entire amount constituted an excessive fine in violation of the Eighth Amendment.  Bajakajian, supra at 339-340.

To decide whether the forfeiture of Bettencourt's pension qualifies as a fine under the Supreme Court's definition, the first question to be answered is whether the forfeiture operates to "extract payments" from him -- that is, requires the transfer of money or some other form of property of Bettencourt's to the government. See Hopkins v. Oklahoma Pub. Employees Retirement Sys., 150 F.3d 1155, 1162 (10th Cir. 1998) (considering forfeiture of retired State employee's pension as result of criminal bribery conviction: "Implicit in [the Supreme Court's] interpretation of the Excessive Fines Clause is the notion that it applies only when the payment to the government involves turning over 'property' of some kind that once belonged to [the employee]").[11]

In response to this first question, Bettencourt contends that the mandatory forfeiture under § 15 (4) has required him to transfer or turn over property -- his right to receive his retirement allowance -- to the Commonwealth. PERAC, on the other hand, argues that Bettencourt had no property interest in the retirement allowance being forfeited. Rather, in PERAC's view, Bettencourt, as a member of the Peabody retirement system, had only a future interest in receiving retirement allowance

---

[11] If the forfeiture does require transfer of a property interest, the second question is whether the forfeiture operates as a form of punishment related to Bettencourt's convictions. We address the punishment issue in part 1.b, infra.

payments, one that was wholly contingent on his not being convicted of a crime involving misconduct in office, and "contingent, future interests are not property."

We do not share PERAC's view. Under the Commonwealth's contributory retirement system, the relationship between a member and the system is contractual. See G. L. c. 32, § 25 (5).[12] However, we previously have noted that in this context, the term

"'[c]ontract' (and related terms such as rights, benefits, protection) should be understood . . . in a special, somewhat relaxed sense. . . . It is not really feasible -- nor would it be desirable -- to fit so complex and dynamic a set of arrangements as a statutory retirement scheme into ordinary contract law which posits as its model a joining of the wills of mutually assenting individuals to form a specific bargain. . . . When, therefore, the characterization 'contract' is used, it is best understood as meaning that the retirement scheme has generated material expectations on the part of employees and those expectations should in substance be respected. Such is the content of 'contract.'

". . .

---

[12] General Laws c. 32, § 25 (5), provides:

"The provisions of [G. L. c. 32, §§ 1 through 28,] inclusive, and of corresponding provisions of earlier laws shall be deemed to establish and to have established membership in the retirement system as a contractual relationship under which members who are or may be retired for superannuation are entitled to contractual rights and benefits, and no amendments or alterations shall be made that will deprive any such member or any group of such members of their pension rights or benefits provided for thereunder, if such member or members have paid the stipulated contributions specified in said sections or corresponding provisions of earlier laws."

> "The contract so 'envisaged [by G. L. c. 32, § 25 (5),] is under the shelter of the impairment-of-contract clause, or, <u>what amounts to much the same thing, the due process clause of the Federal Constitution and State constitutional provisions cognate to the latter. . . . [A] retirement plan establishing a contractual relationship[,] . . . whether viewed strictly as contract or as property[,] may be constitutionally guarded against impairment</u>" (emphasis supplied; footnote omitted).

Opinion of the Justices, 364 Mass. 847, 861, 863 (1973).[13]  See Madden v. Contributory Retirement Appeal Bd., 431 Mass. 697, 701 (2000) (under contractual relationship between State retirement system members and State, "[t]here can be no change to the system that deprives members of benefits as long as they have paid the required contributions").

As Opinion of the Justices and Madden reflect, this court has long held the view that a public employee who is a member of a retirement system holds an interest in retirement benefits that originates in a "contract" and in substance amounts to a

---

[13] In Opinion of the Justices, 364 Mass. 847, 862 (1973), we quoted with approval the following passage from a decision of a California appellate court, Wisley v. San Diego, 188 Cal. App. 2d 482, 485-486 (1961), and characterized the passage as describing a contractual relationship similar to that envisaged by G. L. c. 32, § 25 (5):

> "Where a city charter provides for pensions, it is well settled that the pension rights of the employees are an integral part of the contract of employment and that these rights are vested at the time the employment is accepted.  An amendment to the charter which attempts to take away or diminish these vested rights is an unconstitutional impairment of contract.  However, this does not preclude reasonable modifications of the pension plan prior to the employees' retirement [to maintain the financial viability of the plan]. . . ."

property right.  See Garney v. Massachusetts Teachers'
Retirement Sys., 469 Mass. 384, 389 (2014) (G. L. c. 32, § 15,
"involves the forfeiture of property").  See also Collatos v.
Boston Retirement Bd., 396 Mass. 684, 686 (1986).[14,15]  Cf. G. L.
c. 208, § 34 (property constituting marital estate subject to
division in divorce includes vested and unvested retirement

_____

[14] The public employee retirement administration commission
(PERAC) argues that to the extent Collatos v. Boston Retirement
Bd., 396 Mass. 684, 686 (1986), implies that forfeiture of a
pension involves property, the case was concerned with G. L.
c. 32, § 15 (3A), which requires forfeiture not only of pension
benefits, but also of the employee's accumulated salary
deductions (i.e., the employee's contributions to the retirement
system), whereas § 15 (4) directs that the employee's
accumulated deductions be returned to him.  We read Collatos as
more broadly suggesting that the employee's right to pension
benefits themselves represented a property interest, but in any
event, § 15 (4) itself requires an employee to forfeit the
interest that would otherwise be due to him on his accumulated
salary deductions, see G. L. c. 32, § 15 (4), and such interest
clearly represents property belonging to the employee.

[15] While the view that retirement benefits provided by a
public employee retirement system constitute a contractually
created property right is not universally shared by all, a
number of courts have so held.  See, e.g., Betts v. Board of
Admin. of the Pub. Employees Retirement Sys., 21 Cal. 3d 859,
863 (1978); Birnbaum v. New York State Teachers Retirement Sys.,
5 N.Y.2d 1, 8-9 (1958); Mazzo v. Board of Pensions & Retirement
of the City of Philadelphia, 531 Pa. 78, 84 (1992); Leonard v.
Seattle, 81 Wash. 2d 479, 487-488 (1972) (pension rights
constitute property as deferred compensation); Booth v. Sims,
193 W. Va. 323, 337-341 (1994).  See also Pineman v. Oechslin,
195 Conn. 405, 416-417 (1985) (even in absence of express
contractual rights to pension benefits, State employees have
property interest in them).  Contrast, e.g., Hopkins v. Oklahoma
Pub. Employees Retirement Sys., 150 F.3d 1155, 1162 (10th Cir.
1998) (Oklahoma law); Hames v. Miami, 479 F. Supp. 2d 1276, 1288
(S.D. Fla. 2007) (Florida law); Spiller v. State, 627 A.2d 513,
516 (Me. 1993); Scarantino v. Public Sch. Employees' Retirement
Bd., 68 A.3d 375, 385 (Pa. Commw. Ct. 2013).

benefits); Krapf v. Krapf, 439 Mass. 97, 104 (2003) (pension rights "often constitute valuable marital assets").

In arguing that Bettencourt had no property interest in his retirement allowance, as stated previously, PERAC posits that an employee's interest is always contingent on not being convicted of an offense "applicable to his office" under § 15 (4); in contractual terms, this contingency, in PERAC's view, is a condition precedent that must be satisfied before the employee's right to retirement benefits "matures" into a contractual right, see Haverhill v. George Brox, Inc., 47 Mass. App. Ct. 717, 719 (1999), and without so maturing, no property right is or could be created.  In support of this argument, PERAC relies on three decisions of courts applying the laws of other States:  Hopkins, 150 F.3d at 1162 (holding that, under Oklahoma law, public employee convicted of accepting bribe while in office had no property right in pension benefits because pension was always contingent on maintaining "honorable service" while in office; employee's acceptance of bribe constituted breach of duty of honorable service, and as result, employee had no "vested right" in pension); Hames v. Miami, 479 F. Supp. 2d 1276, 1288 (S.D. Fla. 2007) (11th Cir. 2008) (under Florida law, public employee has no property interest in pension because pension vests "subject to the conditions in the forfeiture statute"); and Scarantino v. Public Sch. Employees Retirement Bd., 68 A.3d 375,

385 (Pa. Commw. Ct. 2013) (under Pennsylvania law, public employee's right to pension depends upon certain conditions precedent, including that "an employee cannot have been convicted of . . . [certain] crimes").

We are not persuaded by the reasoning in these cases. If an employee has a protected contract right and, derivatively, a property interest in retirement benefits, the fact that the benefits may be subject to forfeiture on account of misconduct does not change the fundamental character of the contract right or property interest. Rather, it simply means that the employee will lose his or her right and interest as a result of the misconduct.[16]

PERAC also argues that no forfeiture occurred here because, through the operation of § 15 (4), Bettencourt simply was foreclosed from receiving retirement benefits in the future, and nothing was actually "extracted" from him and paid to the government as required to trigger review under the Eighth

---

[16] Furthermore, in contrast to at least the Scarantino case -- and directly contrary to PERAC's argument here -- when we have described a public employee's conviction of an offense described in § 15 (4) in contract terms, we have not characterized the conviction as a "condition precedent" but rather a "condition subsequent" that operates to discharge the duty of the retirement system to pay benefits. See State Bd. of Retirement v. Woodward, 446 Mass. 698, 705 n.7 (2006). This characterization supports our conclusion that, under the statutory scheme, a public employee participating in the retirement system possesses a contractual entitlement or right to the benefits before his or her commission of an offense results in the forfeiture of that right.

Amendment.  We disagree with PERAC that the phrase "extract payments . . . in cash or in kind," as used by the Supreme Court in Austin, 509 U.S. at 609-610, and Bajakajian, 524 U.S. at 328, means that there literally must be a physical transfer of tangible property from the individual to the State; "property" exists in tangible and intangible form.  Under the Commonwealth's public employee retirement system, the employee makes contributions to the system during the period of his or her active employment through salary deductions.  When the employee retires for superannuation (assuming no beneficiaries), he or she retires with an allowance that is comprised of an "annuity share" actuarially determined on the basis of his or her accumulated deductions, and a "pension share" that the governmental unit is required to pay and that represents "the usually considerable difference needed to make good the normal yearly allowance paid to the [employee] until his death." Opinion of the Justices, 364 Mass. at 854.  The pension share that the employee is entitled to receive from the government during retirement is money, i.e., property.  If the employee is obligated to forfeit his or her retirement allowance pursuant to § 15 (4), the pension share reverts to the government; put another way, by operation of § 15 (4), the pension share is effectively transferred from the employee to the government.  We consider this effective transfer of property to qualify as an

extraction of payment from the employee to the sovereign within the meaning of Austin and Bajakajian.

To summarize, at the point that Bettencourt, as a Peabody police officer, became a contributing member of the Peabody retirement system with deductions taken from his salary in accordance with governing statutes and rules, he acquired a protected interest in the retirement allowance provided by the retirement system that amounted to a property interest. See Opinion of the Justices, 364 Mass. at 863.[17] This is not to say that Bettencourt, or any public employee, may not lose his right to receive his retirement allowance as a result of committing a crime connected to his employment. Section 15 (4) expressly requires this result, and Bettencourt raises no challenge to the authority of the Legislature to enact such a statute. But the fact that § 15 (4) mandates forfeiture of an employee's retirement allowance when the employee is convicted of misconduct in office does not mean that the employee lacked a property interest in that allowance prior to the employee's conviction. Rather, it is precisely this property interest that the employee is required to forfeit, and the forfeiture effects what is in substance an extraction of payments from the employee to the Commonwealth.

---

[17] For cases in other jurisdictions to the same effect, see, e.g., Betts, 21 Cal. 3d at 863; Birnbaum, 5 N.Y.2d at 8-9; Leonard, 81 Wash. 2d at 487.

b.  Punishment requirement.  A forfeiture of property only qualifies as a fine under the Eighth Amendment if it constitutes punishment.  See Bajakajian, 524 U.S. at 328.  Bettencourt argues that the required statutory forfeiture here did operate to punish him for his criminal offense; PERAC, pointing to MacLean, 432 Mass. at 351, characterizes the mandatory forfeiture as serving remedial, nonpunitive purposes.

In MacLean, 432 Mass. at 351, in the context of considering a retired public employee's argument that the forfeiture of his retirement allowance violated double jeopardy principles, we stated that "[a]lthough § 15 (4) certainly contains an element of deterrence, it also serves other, nonpunitive purposes, such as protection of the public fisc and preserving respect for government service."  But there is no double jeopardy issue raised in this case, and for purposes of the excessive fines clause, the Supreme Court has made clear that unless the sanction at issue -- here, forfeiture -- can be said to serve "solely" a remedial purpose, it qualifies as punishment.  Austin, 509 U.S. at 610, quoting United States v. Halper, 490 U.S. 435, 448 (1989).  Accord Bajakajian, 524 U.S. at 329 n.4, 331 n.6.

In Bajakajian, the Court described the characteristics of the currency forfeiture at issue there that indicated it qualified as punishment:  "The forfeiture is . . . imposed at

the culmination of a criminal proceeding and requires conviction of an underlying felony, and it cannot be imposed upon an innocent owner." Id. at 328. Forfeiture pursuant to § 15 (4) meets all of these criteria. It operates as "an automatic legal consequence of conviction of certain offenses," MacLean, supra at 343; it only comes into play after the employee's final conviction of one of those offenses; and it cannot be imposed on an employee who is not convicted of committing such an offense. We conclude, therefore, that the forfeiture required by § 15 (4) qualifies as "punishment." Accordingly, because the forfeiture does involve an "extraction of payments" and is punitive, it is a fine within the meaning of the excessive fines clause of the Eighth Amendment. We turn to the question whether the forfeiture is excessive.

2. Was the fine excessive? Bettencourt argues that the mandated forfeiture of his retirement benefits is excessive because the amount of the forfeiture is grossly disproportional to the gravity of his offenses. The District Court judge agreed.[18]

---

[18] The Superior Court judge, having concluded that forfeiture pursuant to § 15 (4) did not constitute a fine, did not analyze excessiveness.

We review the District Court judge's determination of excessiveness de novo. Maher, 452 Mass. at 523.[19] "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." Bajakajian, 524 U.S. at 334. In conducting the review, we are to compare the forfeiture amount to that offense, and "[i]f the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." Id. at 337. See Maher, supra at 522. As the party challenging the constitutionality of the forfeiture, Bettencourt bears the burden of demonstrating that the forfeiture is excessive. Id. at 523.

The amount of the forfeiture is the first issue to consider. Bettencourt estimated the value of his pension benefits to be approximately $1,487,940 and the value of his health care benefits to be approximately $482,500, or approximately $1.9 million in total. In contrast, PERAC introduced an actuarial estimate stating that the value of Bettencourt's pension benefits, independent of the health

---

[19] Factual findings, when made by a judge, are to be accepted unless clearly erroneous. See Bajakajian, 524 U.S. at 336 n.10. The District Court judge made no findings here. As this court has noted, "[i]n any forfeiture case it would be helpful for the judge to make a finding of the total value of the forfeiture involved." MacLean, 432 Mass. at 348 n.11.

benefits, was $659,000. Although PERAC disputes Bettencourt's calculation of health benefits, PERAC agrees that they confer some value. Accepting for purposes of discussion that PERAC's estimate is correct, Bettencourt would face forfeiture of $659,000 at a minimum, plus the value of health insurance benefits.[20] Bettencourt accrued his interest in the forfeited benefits over more than twenty-five years of public service.

Turning to the gravity of the underlying offenses that triggered the forfeiture, we are called upon to gauge the degree of Bettencourt's culpability and, in that regard, to consider the nature and circumstances of his offenses, whether they were related to any other illegal activities, the aggregate maximum sentence that could have been imposed, and the harm resulting from them. See Maher, 452 Mass. at 523, citing Bajakajian, 524 U.S. at 337-339; MacLean, 432 Mass. at 346. We consider these factors in order.

First, with respect to the nature and circumstances of the offenses, Bettencourt was convicted of twenty-one counts of unauthorized access to a computer system in violation of G. L. c. 266, § 120F,[21] during a single shift of duty; in the period of

_____

[20] The differing values and estimates provided by the parties underscore the need for factual findings to be made by the District Court judge reviewing a forfeiture case such as this.

[21] General Laws c. 266, § 120F, provides in relevant part:

access, he viewed private information, including civil service examination scores relating to several police officers within his department. In sentencing Bettencourt, the trial judge observed that there was no evidence that Bettencourt made any use at all of this private information -- i.e., no evidence of any gain to Bettencourt other than the satisfaction of his curiosity; the essence of his crime, in substance, was one of "snooping."

Second, Bettencourt's offenses were wholly unrelated to other illegal activities. Bettencourt had no prior criminal record, and there is nothing before us suggesting that he had engaged in any criminal or illegal misconduct besides this one episode of accessing the computer files without authority.

The third factor focuses on the maximum potential penalties for Bettencourt's offenses. See Bajakajian, 524 U.S. at 338-339. In this regard, "the maximum punishment authorized by the Legislature is the determinative factor." Maher, 452 Mass. at 524 n.12. See MacLean, 432 Mass. at 348.[22] The maximum

---

"Whoever, without authorization, knowingly accesses a computer system by any means, or after gaining access to a computer system by any means knows that such access is not authorized and fails to terminate such access, shall be punished by imprisonment in the house of correction for not more than thirty days or by a fine of not more than one thousand dollars, or both."

[22] Bettencourt argues that our analysis of the maximum penalty should be controlled by the maximum punishment authorized by the Massachusetts sentencing guidelines, citing

punishment authorized by the Legislature for a single offense under G. L. c. 266, § 120F, a misdemeanor, is imprisonment in a house of correction for thirty days and a fine of not more than $1,000, which suggests to us that the Legislature did not view this crime as a grave, serious offense.  See Bajakajian, 524 U.S. at 338-339 (maximum possible punishment of six months' imprisonment and $5,000 fine confirms "minimal level of culpability").  Compare Maher, supra at 524 (discussing maximum penalties of felonies of which retired public employee had been convicted).  The aggregate maximum penalty that could have been imposed on Bettencourt -- imprisonment in the house of correction for 630 days and a fine of $21,000[23] -- does not indicate a substantial level of culpability for purposes of this analysis, particularly where the potential period of imprisonment is relatively low as compared to that of other crimes.[24]

---

Bajakajian, 524 U.S. at 338-339.  The argument fails.  The Massachusetts sentencing guidelines are simply guidelines, not a set of rules that judges must follow -- in contrast to the Federal sentencing guidelines that were in effect at the time that Bajakajian was decided and until the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005).

[23] Bettencourt received a sentence of $10,500, or $500 for each offense, but was not sentenced to a term of imprisonment or probation.  We decline to consider the relative leniency of the sentence received by Bettencourt as opposed to other potential violators.  See Maher, 452 Mass. at 524 n.12.

[24] In MacLean, 432 Mass. at 348, this court opined that the maximum term of imprisonment that could be imposed for a single

Harm caused by the offense is the fourth factor.  PERAC contends that Bettencourt's offenses were a breach of the public trust that was "especially serious because it involve[d] a police officer, in command of a police department, breaking the law in the police station, by willfully impersonating fellow police officers while using their personal information to do so."  We recognize that Bettencourt's offenses certainly violated the privacy rights of his fellow officers, and -- as will always be the case when a public employee commits a crime by violating a law connected to his or her office or position -- that there was a breach of the public trust.  However, no harm to the public fisc was accomplished or threatened here, compare Maher, supra at 524-525, there was no improper or illegal gain involved, compare MacLean, supra at 349-350, and, as the trial judge recognized, the offenses did not warrant concern about protection of the public.  PERAC also argues that Bettencourt's offenses undermined the integrity of the civil service promotion

---

violation of the conflict of interest law, G. L. c. 268A, § 7 -- two years (at the time of that case) -- in combination with the possible aggregate fine for the two offenses to which MacLean had pleaded guilty -- $6,000 -- indicated that the Legislature "considered violations of this [statute] a serious offense." The opinion does not explain why the court combined the maximum statutory period of incarceration for a single violation of G. L. c. 268A, § 7, with the maximum fine for MacLean's two offenses.  The maximum term of imprisonment for two violations of this statute would have been four years.  This is significantly longer than the maximum possible term of imprisonment in this case, 630 days.

process because the knowledge of the identities of his main competitors for promotion to captain and their examination scores provided an advantage to him.  But, as the District Court judge stated, despite PERAC's attempts to speculate about how Bettencourt could have gained from knowledge of the scores, nothing in the record demonstrates that Bettencourt received any personal benefit, profit, or gain from his actions.  Over-all, although there certainly was harm caused by Bettencourt, it was relatively small as compared to our other cases.[25]

---

[25] PERAC also argues that the forfeiture of $659,000, plus an undetermined value of health insurance benefits, is not excessive because it is comparable to other forfeiture amounts upheld by this court and the Appeals Court under § 15 (4).  See Maher, 452 Mass. at 525 ($576,000 not excessive); MacLean, 432 Mass. at 348-350 ($625,000 not excessive); Flaherty, 83 Mass. App. Ct. at 124-125 ($940,000 not excessive).  We disagree.  The facts of each of these cases are very different, and each case must be decided on its own facts.  See Bajakajian, 524 U.S. at 336 n.10.  Cf. Gaffney v. Contributory Retirement Appeal Bd., 423 Mass. 1, 5 (1996) (court must look to facts of each case to determine whether "direct link" between criminal offense and public employee's position exists).  Unlike Bettencourt's offenses, MacLean's offenses resulted in substantial pecuniary benefits to himself and his wife; the forfeiture was triggered by multiple illegal activities that concerned the financial interest of the State; and the offenses occurred over a lengthy period of time.  The crimes to which Maher pleaded guilty -- breaking and entering in the daytime with intent to commit a felony, stealing in a building, and wanton destruction of property -- were far more serious in nature, including felonies; Maher faced a potential maximum penalty of seventeen and one-half years of imprisonment; there was evidence that he stood to gain a substantial salary from his misconduct; and Maher's crimes "could have undermined public confidence in the selection and appointment of officials to supervisory positions," Maher, 452 Mass. at 525.  Flaherty was the superintendent of the Haverhill highway department and was convicted of larceny over

Considering the factors discussed above, we conclude that the complete forfeiture of Bettencourt's retirement benefits in excess of $659,000, accrued over a lengthy career as a full-time municipal police officer, was not proportional to the gravity of the underlying offenses of which he was convicted.  In sum, the forfeiture violates the excessive fines clause of the Eighth Amendment.

3.  If the mandatory forfeiture of a public employee's retirement allowance qualifies as an excessive fine, what is the appropriate remedy?[26]  Although the United States Supreme Court in Bajakajian declined to consider the issue,[27] we recognize that like the trial judge in Bajakajian (see note 27, supra), as

_____

$250, a felony, for stealing paving supplies from the highway department in concert with his son, who also worked for the highway department and was under Flaherty's supervision, in order to make use of the supplies in a side business Flaherty operated; the acts of larceny occurred several times over the course of three years.  The fact that Flaherty stole from the government for years with the help of his government-employed son and used the stolen materials for personal gain added to his level of culpability, justifying the forfeiture of his pension benefits.  No such facts are present in this case.

[26] Following oral argument in this case, we invited the parties to address this and related subsidiary questions in supplemental memoranda.  The parties and the Massachusetts Coalition of Police, as amicus, all did so.

[27] In Bajakajian, 524 U.S. at 326, the trial judge, after determining that the statutory forfeiture amount was excessive and therefore constitutionally invalid, proceeded to establish an alternative forfeiture amount that the judge deemed appropriate.  The Supreme Court, however, declined to consider the propriety of that determination, as the defendant had not cross-appealed that issue.  See id. at 337 n.11.

PERAC points out, a number of courts, after concluding that a statutory forfeiture operated as an excessive fine in the particular circumstances of the case, have proceeded to determine a forfeiture amount that would not be excessive, and have imposed it. See, e.g., United States v. Castello, 611 F.3d 116, 121 (2d Cir. 2010), cert. denied, 562 U.S. 1251 (2011) (where forfeiture amount is constitutionally excessive, court must impose alternative fine in exact amount over which fine would become excessive); United States v. Sarbello, 985 F.2d 716, 724 (3d Cir. 1993) (holding in context of case involving Racketeer Influenced and Corrupt Organizations Act violations that lower court is required to impose maximum fine amount that would not be excessive under Eighth Amendment).[28] Cf. United States ex rel. Bunk v. Gosselin World Wide Moving, N.V., 741 F.3d 390, 405-410 (4th Cir. 2013) (civil qui tam actions under Federal False Claims Act; relator's acceptance of less than statutory False Claims Act penalty was permissible solution to Eighth Amendment excessive fines concern and amount agreed upon did not qualify as constitutionally excessive). But see, e.g., United States v. One Parcel of Real Prop. Located at 461 Shelby Rd. 361, Pelham, Ala., 857 F. Supp. 935, 939-940 (N.D. Ala. 1994) (declining to adopt holding in Sarbello and impose

---

[28] See also United States v. Corrado, 227 F.3d 543, 552, 558 (6th Cir. 2000); United States v. Bieri, 21 F.3d 819, 824 (8th Cir.), cert. denied, 513 U.S. 878 (1994).

alternative fine, noting difficulty judges would face in determining exact amount defendant could be fined without violating excessive fines clause).

We agree with PERAC that, as a general proposition, where a court determines that imposition of a statutorily mandated forfeiture would violate the Eighth Amendment's excessive fines clause, it is likely within the court's authority to determine a level or amount of forfeiture or fine that would be constitutionally permissible -- whether the statutory forfeiture is criminal (as in the Castello and Sarbello cases) or, as here, civil in nature. However, we decline to attempt such a determination in this case. We do so because even if we put to one side the inherent difficulty in determining the maximum amount of retirement allowance forfeiture that is constitutionally permissible,[29] implementation of this judicially

---

[29] In those cases where a court has ordered that a statutory forfeiture amount would be an excessive fine and has imposed a lesser fine, the property subject to forfeiture has been readily divisible, the total value of the property was established, and the forfeiture was to be imposed on a one-time basis by payment to the government. See United States v. Castello, 611 F.3d 116, 118 (2d Cir. 2010), cert. denied, 562 U.S. 1251 (2011) (forfeiture amount determined as percentage of value of checks exceeding $10,000 for which no currency transaction reports were filed, funds connected to crime committed, and defendant's equity interest in his home); Bieri, 21 F.3d at 824 (real property potentially subject to forfeiture was divisible by plots of land); United States v. Sarbello, 985 F.2d 716, 724 (3d Cir. 1993) (specific percentage of defendant's interest in business required to be forfeited). None of those factors is known with adequate certainty in this case.

established forfeiture determination would involve the creation of procedures to be carried out by administrative bodies such as the local retirement board and perhaps PERAC, for which there is currently no legislative authorization or direction.[30]  Stated in more general terms, the decision that a public employee's retirement allowance should be forfeited completely upon conviction of certain types of crimes constitutes a policy choice for the Legislature to make -- as it has by enacting § 15 (4).

This is the first case in which this court has held (rather than assumed) that the forfeiture required by § 15 (4) is subject to the excessive fines clause of the Eighth Amendment, and the first case in which the court has determined that a total forfeiture of a public employee's pension pursuant to § 15

---

[30] In a hypothetical case in which a court determines that total pension forfeiture is constitutionally excessive, PERAC has proposed an implementation plan that appears to require the following.  First, the local retirement board would determine the total value of the employee's (here, Bettencourt's) retirement allowance and health insurance benefits; using the total value, the local board would then determine what the employee's monthly retirement allowance and health insurance benefits would be; and the local board would then calculate how many months need to pass until the sum of the monthly payments withheld equaled the constitutionally permissible forfeiture amount imposed by the judge.  Then, at the end of that calculated period of time, the employee would be entitled to begin receiving monthly payments (if the employee were still alive).  Presumably, there would need to be some additional adjustments to this implementation plan if the employee had elected, as Bettencourt did, a retirement plan option that included payments to a beneficiary in the event of the employee's death.

(4) would violate that clause. Accordingly, the Legislature has not had the opportunity to consider what should occur if and when such a judicial determination of excessiveness is made, and questions of policy abound. For example, assuming that where a court finds that total forfeiture of a public employee's pension would be constitutionally excessive, the Legislature would seek to require forfeiture of the maximum amount a court found constitutionally permissible -- an assumption that itself obviously incorporates a policy judgment -- what method for implementation of such a decision would the Legislature choose? The method suggested by PERAC?[31] A method that distributed to the employee a reduced benefit payment on a periodic basis immediately following the court's judgment, calculated to account for the constitutionally permissible forfeiture amount? A different method altogether? Or, in light of our determination that the excessive fines clause applies to the statutory pension forfeiture program prescribed by § 15 (4), might the Legislature choose to establish a wholly different forfeiture system -- for example, one that provided for different percentages of pension forfeiture depending on the nature and circumstances of the crime?

These types of determinations are ones that fit squarely within the legislative, not the judicial, domain, and we believe

---

[31] See note 30, supra.

that the more prudent approach is to defer to the Legislature for its resolution of such issues in the first instance. See Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320, 329 (2006) (where Court determines statute is unconstitutional as applied, its "ability to devise a judicial remedy that does not entail quintessentially legislative work often depends on how clearly [it has] already articulated the background constitutional rules at issue and how easily [it] can articulate the remedy").

Conclusion. There is no question that the mandatory forfeiture provisions of § 15 (4) serve an important public interest in protecting the honesty and integrity of those who are paid with public funds to carry out the responsibilities of government. We emphasize that the Legislature properly may provide for such forfeitures. We hold today, however, that under the pension forfeiture scheme established by G. L. c. 32, § 15 (4), the complete forfeiture of a public employee's retirement allowance upon conviction of a crime "involving violation of the laws applicable to his office or position" is a fine that is subject to the Eighth Amendment's proscription against excessive fines. In the present case, because § 15 (4), as applied to Bettencourt, results in the imposition of an excessive fine under the Eighth Amendment, the statute cannot be enforced, and his retirement allowance cannot be forfeited

pursuant to the statute's terms.[32]  Any changes to the system of

retirement allowance forfeiture established by § 15 (4)

implicate policy determinations that the Legislature should have

an opportunity to make in the first instance.

The judgment of the Superior Court is vacated, and the case

remanded to that court for entry of judgment affirming the

judgment of the District Court.

So ordered.

---

[32] Our conclusion that Bettencourt is entitled to his retirement allowance in full is based solely on the application of the mandatory total forfeiture provision in G. L. c. 32, § 15 (4), to the particular facts presented in this case -- as discussed, commission of a misdemeanor with a relatively light maximum sentence, no attempt by Bettencourt to divert or misuse public funds, no evidence that the private information he improperly gained was misused (or used at all), and no injury beyond the invasion of the other officers' privacy interest in their respective test scores.  If history is any guide, cases involving such a relatively minimal degree of culpability and harm to the public are highly unusual.  It is significant that in the cases previously before this court and the Appeals Court in which the courts assumed without deciding that the Eighth Amendment's excessive fines clause applied to forfeitures imposed under § 15 (4), the total forfeitures of the employees' retirement allowances were not deemed to be excessive.  See Maher, 452 Mass. at 518, 523-525; MacLean, 432 Mass. at 348-350; Flaherty, 83 Mass. App. Ct. at 124-125.